1  Terrence J. Coleman    (State Bar No. 172183)
   Azin Jalali        (State Bar No. 277326)
2  PILLSBURY & COLEMAN, LLP
   100 Green Street
3  San Francisco, California 94111
   Telephone:   (415) 433-8000
4  Facsimile:   (415) 433-4816
   Email:   tcoleman@pillsburycoleman.com
5           ajalali@pillsburycoleman.com

6  Attorneys for Plaintiff
   BRADLEY A. BUGDANOWITZ

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 BRADLEY A. BUGDANOWITZ,           )   Case No.   3:21-cv-6275
                                     )
12             Plaintiff,            )   **COMPLAINT FOR RECOVERY OF**
                                     )   **EMPLOYEE BENEFITS; BREACH**
13     vs.                           )   **OF CONTRACT; BREACH OF THE**
                                     )   **COVENANT OF GOOD FAITH AND**
14 UNUM GROUP; UNUM LIFE INSURANCE   )   **FAIR DEALING**
   COMPANY OF AMERICA; PROVIDENT     )
15 LIFE AND ACCIDENT INSURANCE       )
   COMPANY; and DOES 1-20, inclusive,)   **DEMAND FOR JURY TRIAL**
16                                   )
               Defendants.           )
17 _____  )

18

19        Plaintiff alleges on information and belief as follows:

20                    **JURISDICTION AND VENUE**

21        1.    This Court has jurisdiction pursuant to the Employee Retirement Income Security Act

22 of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), over which this Court possesses original jurisdiction

23 pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

24        2.    Venue is proper in this District because Defendants Unum Group, Unum Life Insurance

25 Company of America ("Unum Life") and Provident Life and Accident Insurance Company

26 ("Provident") are authorized to transact business in the State of California, the applicable benefit

27 policies were administered in this District, breach took place in this District, and the Defendants may

28 be found in this District.  29 U.S.C. § 1132(e)(2).

## THE PARTIES

3.     Plaintiff Bradley A. Bugdanowitz ("Plaintiff") is an individual who is currently, and at all relevant times was, residing in the State of California.

4.     Defendant Unum Life was, and is, a business entity authorized to transact business in the State of California, including the marketing, sale and issuance of disability insurance.

5.     Defendant Provident was, and is, a business entity authorized to transact business in the State of California, including the marketing, sale and issuance of disability insurance.

6.     Unum Life and Provident are now wholly controlled and operated by Unum Group and have no employees with the responsibility of handling, processing or adjudicating disability insurance claims.  Unum Group, Unum Life, and Provident, in concert and as joint venturers, handled and processed Plaintiff's claim for benefits as described below.  Unum Group is further the alter ego of Unum Life and Provident.  Unum Group controlled, directed and/or supervised the activities of Unum Life and Provident.  In the case of *Chapman v. UnumProvident Corporation, et al.*, Marin County Superior Court, Case No. CV012323, a jury unanimously found Unum Group (then called UnumProvident) to be the alter ego of Provident as well as of a similarly structured Unum Group subsidiary, The Paul Revere Life Insurance Company, which issue was fully litigated on the merits and is now final, such that Defendants are now collaterally estopped from contesting the issue herein.

7.     Unum Group owns and/or operates a number of insurance companies, including Unum Life and Provident.  None of the insurance companies employ their own employees.  Instead, the claims processes of all the insurance companies are consolidated into a claims operation which is operated entirely by Unum Group and by its employees, all of whom are employed by Unum Group.

8.     Claims employees and physicians are employed by Unum Group and are used among all insurers which are part of the Unum Group empire and are owned either directly or indirectly by Unum Group.  Said physicians and employees are used to process claims for all such insurers without distinction, and the methods employed to handle claims among all insurers are coordinated by high-level claims personnel and employed throughout the claims of all insurers under the Unum Group umbrella.

9.      Correspondence regarding claims in general, and in connection with Plaintiff's claim, contains the letterhead of Unum Group.

10.     The methods and claims procedures, employees, and consulting physicians are used in the same manner throughout the entire Unum Group claims process without any material differences between insurers and are all supervised by the same high-level Unum Group claims personnel.

11.     Statistics are maintained and provided to high-level Unum Group claims personnel for all of the insurers within the Unum Group empire, compared with each other and used to increase the profitability of the claims operation of each insurer at the expense of legitimate claims. Further, Unum Group distributes monthly targets to its claims personnel setting forth the amount of claim closures they are expected to achieve and conditions the amount of bonus/incentive pay they receive on whether such targets are consistently met. Such targets were distributed to the individuals responsible for terminating Plaintiff's claim for benefits.

12.     The California Department of Insurance ("DOI") conducted an examination of the policies and procedures of Unum Group, Unum Life, and Provident, and concluded that the practices and procedures of Unum Group, Unum Life, and Provident constituted unfair business practices and that they operated their claims department in a manner wherein they sought to find reasons to justify a denial of a claim rather than conduct a full, fair and thorough investigation of a claim. On or about October 1, 2005, Unum Group and the DOI entered into a series of identical agreements with various Unum Group insurers, identified as the California Settlement Agreement ("CSA"). These agreements were approved, authorized and ratified by Unum Group and each of its participating insurers, including Unum Life and Provident. In the CSA, Unum Group and the companies within its empire agreed to change specific practices which they knew to be unfair, harmful to insureds and violative of their insureds' rights, but which had been employed by Unum Group and its companies to support the denial of legitimate claims.

13.     It was the responsibility of Unum Group and its claims personnel to implement the changes agreed to under the CSA within and throughout Unum Group and the insurers within its empire, including Unum Life and Provident.

COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS; BREACH OF CONTRACT;
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

14.     Unum Group and its insurers paid lip service to these changes, but in reality have refused to make all of the changes that they agreed to make and have continued to deliberately operate their claims department in a manner intended to create a basis to deny disability claims and to increase their profits at the expense of insureds by continuing to deny their legitimate claims.  Many of the practices which Unum Group and its insurers agreed not to employ were, in fact, employed to deny Plaintiff's claim.

15.     Plaintiff is ignorant of the true names and capacities of the Defendants named herein as Does 1 through 20, inclusive, and therefore sues these Defendants by said fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when they have been ascertained.

16.     At all material times herein, each Defendant was acting as individuals or as the agents and employees of the remaining Defendants and in doing the things hereinafter alleged was acting either individually or within the course and scope of said agency and with the permission and consent of its principal.  The acts and conduct alleged herein of each said Defendant were known to, authorized by, and/or ratified by the other Defendants.

## FACTUAL ALLEGATIONS

17.     At all relevant times, Plaintiff was a partner in the law firm of Goodwin Procter, LLP ("Goodwin").

18.     At all relevant times incident to his employment with Goodwin, Plaintiff participated as an insured employee in a group long-term disability plan (the "Group Plan") created to provide long-term disability benefits to Goodwin employees.  The Group Plan is sponsored by Goodwin, but insured by a group long-term disability insurance policy underwritten and issued by Unum Life, Policy No. 38003 (the "Group Policy").

19.     The Group Policy was issued in the State of California, and Goodwin is the policyholder of the Group Policy.

20.     Plaintiff received coverage under the Group Plan and Group Policy as a "participant", as defined by 29 U.S.C. § 1002(7).

/ / /

/ / /

21.     The Group Plan was and is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA").  Unum Life was and remains the de facto co-plan administrator and co-claims fiduciary of the Group Plan.

22.     At all relevant times, the Group Plan stated that Unum Life was required to pay Plaintiff a monthly long-term disability benefit if he met the Plan's definition of "Disability."

23.     The Group Plan purports to define "Disability" as follows:

"Disability" and "disabled" mean that because of injury or sickness:

1.  the insured cannot perform each of the material duties of his regular occupation; or
2.  the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
    a.  performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
    b.  earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

Note: For attorneys, "regular occupation" means the specialty in the practice of law which the insured was practicing just prior to the date disability started.

24.     At all relevant times, Plaintiff was insured under two individual disability income policies of insurance (the "IDI Policies"), both issued by Provident in the State of California, policy number 52-04961531 and policy number 52-03676063.  The IDI Policies were underwritten, sold and issued to Plaintiff separate and apart from the Group Plan, operate independently from the Group Plan, are not related to or connected with the Group Plan, and have terms and provisions that are at variance with the Group Policy.

25.     Individual disability income insurance policy number 52-04961531 purports to define "Total Disability" as follows:

Total Disability or Totally Disabled, during the Usual Occupation Period shown in the Policy Schedule, means that as a result of Sickness or Injury:

1.  You are not able to perform with reasonable continuity the Substantial and Material Acts necessary to perform Your Usual Occupation in the usual and customary way; and
2.  You choose not to work at any occupation.

26.     Individual disability income insurance policy number 52-03676063 purports to define "Total Disability" as follows:

Total Disability or Totally Disabled means a Disability that renders You unable to perform with reasonable continuity the substantial and material acts necessary to pursue Your Usual Occupation in the usual and customary way.

27.     In addition to the policy definitions above, under California law governing the definition of total disability, Defendants were obligated to pay monthly disability benefits in the event that Plaintiff became unable to perform with reasonable continuity in the usual and customary manner the material and substantial duties of his own occupation.

28.     Under the Group Policy, the IDI Policies, and California law governing the definition of disability, Defendants promised, in relevant part, to pay monthly disability benefits to Plaintiff in the event that he became disabled.

29.     At all material times herein, Plaintiff complied with all the material provisions pertaining to the Group Policy and the IDI Policies and/or compliance was waived by Defendants or Defendants are estopped from asserting non-compliance.

30.     In 1996, Plaintiff graduated with a Juris Doctor degree with honors from the University of Chicago Law School and commenced a 24-plus year career as an attorney.  Plaintiff joined Goodwin in 2008, where he worked primarily developing the firm's West Coast mergers and acquisitions practice.  From 2012 through 2017, Plaintiff served as managing partner of the firm's San Francisco office and led the office through a period of significant expansion.

31.     In 2017, Plaintiff had to relinquish his role as managing partner because the dual responsibilities of representing his clients and managing the office had become too much for him, in light of his declining health.  By that point in time, he had already been diagnosed with adult onset of Type 1 Diabetes, suffered episodes of diabetic ketoacidosis, and had been hospitalized for severe liver inflammation with accompanying acute hypertriglyceridemia, compromised kidney function, and hepatic encephalopathy.

32.     In 2019, Plaintiff suffered four separate hospitalizations (February 26-March 1, May 20-22, June 17-20, and December 20-21), each of which was terrifying, marked by severe bouts of hepatic encephalopathy and resulting delirium, among other things.  Following these hospitalizations, Plaintiff would remain clouded, where the simple act of watching the news or reading an article was impossible for him.  Plaintiff was on leave from Goodwin for much of 2019, but attempted to return to

work that November.  It was readily apparent that he was incapable of completing the duties of his occupation due to his cognitive decline.  Plaintiff's attempted return to work in November 2019 resulted in another terrifying hospitalization that December.

33.     In consultation with his physicians, Plaintiff submitted his claim for disability benefits on March 9, 2020.  Plaintiff's multiple co-morbidities include: adult onset of Type 1 Diabetes, acute kidney injury from episodes of diabetic ketoacidosis, systemic hypertension, periodic severe hypertriglyceridemia, and severe acute liver injury with associated hepatic encephalopathy.  His primary care physician, Eric Swagel, M.D., who has closely followed the progression of Plaintiff's liver disease, certified that Plaintiff was unable to perform the cognitive activities required of an attorney.

34.     On April 21, 2020, Defendants approved Plaintiff's short-term disability benefits from February 26, 2019 through August 24, 2019.

35.     In a subsequent paper-review of Plaintiff's medical records, Defendants' medical consultant Joseph A. Antaki, M.D. determined that Plaintiff's restrictions and limitations were not supported after January 31, 2020.  During a June 23, 2020 phone call between Dr. Antaki and Plaintiff's treating physician Dr. Swagel, Dr. Swagel disagreed with Dr. Antaki's assessment and confirmed that Plaintiff remained incapable of returning to his prior occupation as an attorney.  On June 24, 2020, Dr. Antaki sent Dr. Swagel a letter summarizing their phone call.  In a follow-up letter received by Dr. Antaki on June 25, 2020, Dr. Swagel clarified that "it is true that the unpredictable nature of Mr. Bugdanowitz's illness is one reason for my recommendation that he not return to work. Further informing my recommendation that he not return to work are Mr. Bugdanowitz's report and my opinion that he has not returned to [] a level of cognitive functioning necessary for average performance in his previous role as an attorney."

36.     In a June 29, 2020 letter, Plaintiff provided additional information to rebut Dr. Antaki's position that restrictions were unsupported from February 2020 forward.  Plaintiff stated, "I would like to respectfully submit that any lack of recent medical records does not support a reversal or improvement of my medical condition but instead reflects the shelter-in-place orders implemented in San Francisco and Marin Counties in March which caused me to cancel a number of face-to-face

doctor appointments and all blood work and imaging, including a liver fibroscan under the supervision

of my hepatologist previously scheduled for early May."

37.     In a July 7, 2020 letter, Defendants stated that based on medical records through

January 2020, "[w]e agree you would have been medically preclud[ed] from perform[ing] some or all

[of] the duties of your occupation from February 26, 2019 through January 31, 2020."  Provident paid

benefits under the IDI Policies.  Because Plaintiff did not meet the financial loss requirement, no

benefits were paid under the Group Policy.

38.     On August 6, 2020, Defendants determined that there was "no support" for medical

restrictions or limitations beyond January of 2020 that would preclude Plaintiff from working in his

prior occupation.  Defendants' determination was based partially on their in-house Designated Medical

Officer Neal Greenstein, M.D's medical review.  In his review, Dr. Greenstein stated, "Neither the

psychiatrist nor Dr. Swagel offers any neurocognitive evaluation that would support impairment.

Therefore, in my opinion, the evidence does not support structural or functional deficits associated

with the claimant's neurological, mental status, hepatic, or other organ systems documented on the

exam or diagnostic testing that would preclude him from the full-time occupational demands as an

attorney from 02/2020 forward."  Effective February 1, 2020, Defendants closed all of Plaintiff's

claims under his Group Policy and IDI Policies.

39.     On February 1, 2021, Plaintiff timely appealed Defendants' decision.  With his appeal,

Plaintiff included a Neuropsychological Evaluation Report conducted by Mary Ann Yaeil Kim, Ph.D.

Dr. Kim concluded that Plaintiff's episodes of hepatic inflammation and associated encephalopathy

resulted in "permanent and residual cognitive deficits.  Corroborated on extensive testing there is

permanent damage that is not going to change or resolve back to his premorbid functioning." "His poor

memory, concentration, and limited processing abilities" make functioning as an attorney "an

impossibility."  Plaintiff also included medical records from his treating hepatologist Richard Todd

Frederick, M.D., who diagnosed Plaintiff with covert hepatic encephalopathy.

40.     Despite the overwhelming evidence establishing Plaintiff's obvious disability, on March

3, 2021, Defendants indicated that they intended to uphold their prior termination of benefits based on

additional reviews conducted by their paid consultants, including a neuropsychological review by Julie

COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS; BREACH OF CONTRACT;
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Guay, Psy.D.  Defendants knew, however, that Dr. Guay had inadequate and incomplete information with which to opine on Plaintiff's cognitive functioning and deficits.

41.     On March 18, 2021, Plaintiff responded to Defendants' position with further supportive information, including Dr. Kim's rebuttal to Dr. Guay's review.  Additionally, Plaintiff's counsel noted that Dr. Guay's report was deficient because of the inadequate and incomplete information made available to Dr. Guay.

42.     Unum knew that Dr. Guay's analysis was bogus.  Nonetheless, without conducting a meaningful review or a good faith investigation or evaluation of the information that Plaintiff submitted, Defendants upheld their decision to terminate Plaintiff's claims as of February 1, 2020.

43.     Defendants' actions are contrary to the terms of the Group Policy, the IDI Policies, and California law and have no reliable evidentiary support.  Defendants' actions are also contrary to the reports and assessments of all of the doctors who have personally evaluated and treated Plaintiff. Defendants' determination was based on evidence that is neither reliable nor "substantial," and its determination denied Plaintiff due process of law.  In adjudicating Plaintiff's claims, Defendants' actions fell well below the "higher-than-marketplace quality standards" imposed by ERISA according to *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).

44.     As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered damages as outlined below.

45.     As a result of the actions of Defendants, and each of them, Plaintiff has been improperly denied disability benefits due since February 1, 2020, together with interest thereon, and has suffered further and severe economic hardship, emotional distress, and an exacerbation of his physical condition.

46.     As a further result of the actions of Defendants, Plaintiff has been required to engage the services of legal counsel for the purpose of obtaining his insurance benefits.

47.     At all material times herein, Unum Group, Provident, and Does 11 through 20 have engaged in conduct that was oppressive, fraudulent and malicious within the meaning of Civil Code §3294, and said Defendants, and each of them, are liable for exemplary damages in an amount to be shown at trial, including treble punitive damages pursuant to Civil Code §3345.  Plaintiff is disabled

within the meaning of Civil Code §1761(g) and Unum Group, Provident, and Does 11 through 20, and each of them, knew or should have known that its conduct was directed to a disabled person within the meaning of Civil Code §1761(g); Defendants' conduct caused Plaintiff to suffer loss of replacement income and assets essential to his health and welfare; and Plaintiff was substantially more vulnerable than other members of the public to Defendants' conduct due to poor health and disability and actually suffered substantial physical or economic damage resulting from Defendants' conduct.

## FIRST CAUSE OF ACTION

### Recovery of Employee Benefits
### (Against Unum Life and DOES 1-10; 29 U.S.C. § 1132(a)(1)(B))

48.     Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.     At all relevant times, Plaintiff was insured under the Group Plan and Defendant Unum Life was responsible for the administration and handling of Plaintiff's disability benefits.

50.     At all material times herein, Plaintiff has complied with all the material provisions pertaining to the Group Plan and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

51.     While the Group Plan was in full force and effect, Plaintiff became and remains totally disabled and entitled to receive disability benefits under the Group Plan.

52.     Contrary to the evidence and argument presented, Defendants terminated Plaintiff's claim for disability benefits, and have refused and continues to refuse to make full disability payments to Plaintiff in the appropriate amount due.  Plaintiff appealed Defendants' termination of disability benefits and exhausted his administrative remedies.  The appeal was denied by Defendants on April 27, 2021.

53.     Defendants' refusal to pay Plaintiff disability benefits violates the terms of the Group Plan, and Defendants' actions in administering Plaintiff's claim and in terminating disability benefits were wrongful, arbitrary, and capricious.  At all material times herein, Defendants failed and refused to honor the Group Plan.  Defendants are therefore liable for all disability benefits due under the Group

Plan and the Group Policy.  Moreover, Plaintiff's condition is expected to prevent him from returning to work in any capacity whatsoever for the duration of the Group Policy's maximum benefit period.

54.     As a proximate result of Defendants' actions, Plaintiff has been deprived of his disability benefits to which he was and is entitled and has suffered damages as set forth above in paragraphs 44-46.  Plaintiff further seeks a declaration as to his entitlement to future benefits, to wit: an injunction prohibiting Defendants from terminating or reducing his disability benefits until the end of the maximum benefit period, or such other declaration that the Court deems proper.

## SECOND CAUSE OF ACTION

### Breach of Contract
### (Against Unum Group, Provident and DOES 11-20)

55.     Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     At all material times herein, Defendants, and each of them, issued the IDI Policies to Plaintiff as aforesaid.

57.     Plaintiff has complied with all material conditions required under the terms of the IDI Policies.

58.     Plaintiff is disabled from his regular occupation as a partner specializing in mergers and acquisitions and is entitled to disability benefits and other applicable benefits under the aforementioned IDI Policies.  Defendants, and each of them, are estopped from asserting and have waived all contractual provisions, if any, purporting to limit their obligations to provide benefits.

59.     At all material times herein, Defendants, and each of them, have failed and refused to honor their Policies of insurance with Plaintiff, and Defendants, and each of them, have refused to pay benefits due under the IDI Policies and are liable for breach of contract.

60.     As a proximate result of Defendants' actions, Plaintiff has been damaged as set forth in Paragraphs 44 through 46 above.

/ / /

/ / /

/ / /

COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS; BREACH OF CONTRACT;
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## THIRD CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing
### (Against Unum Group, Provident, and DOES 11-20)

61.     Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.     At all material times herein, Defendants, and each of them, owed Plaintiff a duty of good faith and fair dealing with respect to the payment of his insurance benefits and covenanted that they would do nothing to impair Plaintiff's rights to receive the benefits of the IDI Policies.

63.     At all material times herein, Defendants, and each of them, violated their covenant of good faith and fair dealing by, *inter alia,* the following:

A.     Consciously and unreasonably failing to investigate or evaluate Plaintiff's claim fairly or in good faith, but, on the other hand, utilizing the information available to them in a manner calculated to provide them with a wrongful but plausible sounding justification to deny benefits;

B.     Consciously and unreasonably setting out to create a plausible sounding basis upon which to deny Plaintiff's claim and seeking to obtain information calculated to permit them to claim that they had a plausible sounding basis upon which to deny Plaintiff's benefits;

C.     Consciously and unreasonably failing to thoroughly and fairly investigate all information reasonably available to them;

D.     Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim for benefits and consciously and unreasonably failing to investigate all bases to support coverage;

E.     Consciously and unreasonably delaying, refusing, and continuing to refuse to pay Plaintiff benefits properly payable under the IDI Policies and continuing to deprive Plaintiff of his rightful benefits with the knowledge that said delays and denials were and are wrongful and contrary to their obligations under the IDI Policies and the law;

F.     Consciously and unreasonably failing to investigate Plaintiff's claim fairly and in good faith and refusing to give Plaintiff's interests at least as much consideration as they gave their own;

G.    Consciously and unreasonably failing to adopt and implement reasonable or proper standards applicable to the prompt and fair investigation of the processing of Plaintiff's claim under the IDI Policies;

H.    Consciously and unreasonably failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim even though liability therefor was and is reasonably clear;

I.    Consciously and unreasonably refusing to pay Plaintiff's claim with the knowledge that Plaintiff's claim is payable and with the intent of saving them money at Plaintiff's expense;

J.    Consciously and unreasonably interpreting information available to them in such a way as would justify termination of benefits even though Defendants knew that such interpretation was contrary to the facts and was wrongful; and

K.    Consciously and unreasonably failing to comply with the terms and provisions of the California Settlement Agreement in order to continue a pattern and practice of improper claims handling tactics.

64.    Such Defendants, and each of them, have engaged in a pattern and practice of improper claims handling tactics as reflected in their claims handling that was the subject matter of the following lawsuits: *Carolyn M. White, D.D.S. v. UNUM Group, et al.*, San Diego Superior Court, Case No. 37-2015-00028243-CU-IC-CTL; *Natalie K. Mutz v. UNUM Group, et al.*, San Francisco Superior Court, Case No. CGC-15-549537; and *Thomas J. Purcell v. UNUM Group, et al.*, San Francisco Superior Court, Case No. CGC-16-551085.

65.    Said conduct of Defendants, and each of them, included unfair or deceptive acts or practices or unfair methods of competition as part of a pattern and practice of improper claims administration.  Among other things, Unum Group and Provident have implemented and continue to utilize a claims handling system that establishes advance corporate plans for liability acceptance rates and claim closures; uses scorecards, tracking sheets and other measures to track employee performance; and rewards employees for meeting those plans, including through the use of a "human

capital" committee that exists to evaluate incentive compensation plans and to assess individuals' receipt of incentive bonuses.

66.     As a proximate result of Defendants' actions, Plaintiff has been damaged as set forth in Paragraphs 44 through 46 above.  Further, Plaintiff seeks punitive damages from the Defendants, and each of them, as set forth in Paragraph 47 above.

WHEREFORE, Plaintiff prays as follows:

AS TO THE FIRST CAUSE OF ACTION AGAINST UNUM LIFE:

1.     For a determination that Plaintiff is entitled to receive past and ongoing disability benefits under the Group Plan and Group Policy from February 1, 2020 through the date judgment is entered, and an injunction mandating the payment of benefits to Plaintiff for the maximum benefit period under the Group Plan;

2.     For general damages and/or make-whole relief according to proof;

3.     For attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g);

4.     For prejudgment interest on all disability benefits that have accrued prior to the judgment; and

5.     For such other and further relief as the Court may find appropriate.

AS TO THE SECOND AND THIRD CAUSES OF ACTION AGAINST UNUM GROUP AND PROVIDENT:

1.     For damages according to proof;

2.     For general damages according to proof;

3.     For exemplary damages according to proof;

4.     For attorneys' fees and costs as sued herein; and

5.     For such other and further relief as the Court may find appropriate.

/ / /

/ / /

/ / /

/ / /

1

**JURY TRIAL IS HEREBY DEMANDED**
**(AS TO THE SECOND AND THIRD CAUSES OF ACTION)**

2

3    Dated: August 13, 2021                    PILLSBURY & COLEMAN, LLP

4

5                                              By: _____

6                                              Terrence J. Coleman
                                               Azin Jalali
7                                              Attorneys for Plaintiff
                                               BRADLEY A. BUGDANOWITZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS; BREACH OF CONTRACT;
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING